THE STATE OF OHIO, APPELLEE, *v.* BREIDENBACH, APPELLANT.
(Two cases.)

(Nos. 7644 and 7645—Decided November 24, 1964.)

*Mr. John C. Young*, city attorney, *Mr. Howard P. Lowe* and *Mr. Norman M. Frank*, for appellee.
*Messrs. Bessey & Sexton*, for appellant.

*Per Curiam.* Charles P. Breidenbach, defendant, has appealed from his conviction of two charges of violating Section 303.23 of the Revised Code, the state alleging that Breidenbach used land in violation of the Franklin County Zoning Resolution, adopted in 1948. Breidenbach pleaded not guilty and, among several errors assigned, claims that the state's evidence was insufficient for failure to offer any proof concerning a prior nonconforming use or that Breidenbach does not come within any exception in the ordinance.

In substance, the state's claim was that Breidenbach on or about October 1, 1963, and also on December 4, 1963, "parked or permitted the parking of two or more commercial vehicles on the premises at 2590 Ferris Road, contra," etc. The two affidavits specified that the acts by Breidenbach were in violation of two specific sections of the zoning resolution, to wit, Section III, Subsection A, and Section XXIX.

Referring to Section XXIX, we find it contains three para-

graphs or subsections. The first subsection authorizes the building inspector, etc., to take enforcement action and forbids issuance of permits in violation of the entire zoning resolution. The second subsection makes it a violation of the resolution to construct, alter, etc., a building contrary to the zoning resolution and authorizes the revocation of a permit if a false statement is made in obtaining the permit. The third subsection makes it a misdemeanor to violate the terms of the resolution and establishes fines and jail sentences for violations. It is quite clear that this prosecution was not based upon subsection 3, *supra*, but was based upon state law. It would seem doubtful if any part of Section XXIX, *supra*, was in any way violated or even involved in this prosecution.

The only other section of the zoning resolution claimed to have been violated was Section III, A. This appears in the substitute mutual Exhibit I, the Franklin County Zoning Resolution, page 4. The entire resolution contains 31 sections. Section III, *supra*, is devoted to "1-R-20 Districts," which are further described as "One Family Residence Districts. 20,000 square feet." There are seven subdivisions in Section III, *supra*, designated as A, B, C, D, E, F and G. The subdivision involved here bears the following heading: "A. Uses Permitted: (See also supplemental uses for this district.)" Under this heading, there appear 16 separate uses permitted, the first of which reads as follows:

"1. One family dwellings. 20,000 sq. ft. lot area."

In the 15 paragraphs which follow (see Mutual exhibit I, page 4) are resident offices of recognized professions; customary home occupations; churches, parish houses and Sunday Schools; all public buildings except penal and correctional institutions; truck gardens, nurseries, a wide variety of agricultural pursuits and others.

We have been unable to find anywhere in Section III, A, *supra*, any reference to the number of vehicles, commercial or otherwise, which may be parked on such premises. It was the contention of the state that this is a so-called all-inclusive type of resolution, that is, unless the use be permitted it must be understood that it is prohibited.

We have experienced some difficulty in applying this for a number of reasons. The first is that Section III, A, *supra*, makes

no mention of any parking whatever and it is difficult to conceive a zoning resolution which would ban even a family car.

Nowhere in the two affidavits is any reference made to Section XVI which deals with "supplementary use, height, and area regulations." (See mutual exhibit I, pages 19-25.) By referring to Section XVI, D, headed "Automobile parking space" we find ten paragraphs dealing with the subject of automobile parking.

It may be contended that paragraph D, 1 is applicable, but it would appear that it applies only where "any lot or plot" is used "for any one family dwelling, duplex, semi-detached dwelling, apartment house, hotel, or any other single or multiple family use." It appears further that paragraph D, 1 establishes a minimum requirement and that under it "garage space or vehicle parking space shall be provided on such lot or plot," and that it "shall be of sufficient area to accommodate one automobile or vehicle for each family unit or apartment contained on such lot or plot." The other nine paragraphs of subsection D, *supra*, appear not to be applicable.

As stated before, the language used in the two affidavits was in the alternative charging that Breidenbach "parked or permitted the parking of two or more commercial vehicles on the premises," etc. It may well be that the building inspector intended to charge "standing," or "storage," or even operating a service facility or repair facility. However, the affidavits as drawn do not even charge that the two vehicles were parked on the premises at the same time. In this connection, we observe in passing that storage of automobiles indicates a certain degree of permanency, while the term "parking" connotes transience. See 31 Words and Phrases, "Parking," page 155.

It is the contention of Breidenbach that the premises in question were so used prior to the adoption of the zoning resolution as to be a nonconforming use, and that the zoning resolution was adopted subject to the provisions of Section 303.19 of the Revised Code, which provides in part as follows:

"The lawful use of * * * any land or premises, as existing and lawful at the time of enactment of a zoning resolution * * * may be continued, although such use does not conform with the provisions of such [zoning] resolution * * *."

Breidenbach's claim, among others, under the second assignment of error is that his use is exempted under the zoning resolution as a nonconforming use existing prior to the adoption of the zoning resolution and that the burden was on the state to show that he did not come within any exception contained in the resolution. For a similar provision as to nonconforming uses, see Section XXI entitled "Existing non-conforming uses" of mutual exhibit I, page 39.

In this connection, reference must be made to a decision of the Supreme Court of Ohio in *Village of Strongsville* v. *McPhee* (1944), 142 Ohio St. 534. The second paragraph of the syllabus reads as follows:

"In the prosecution for the violation of an ordinance of a municipality the burden rests upon the municipality to show that the defendant does not come within any exception contained in the ordinance describing the offense."

In the course of the opinion by Turner, J., there appears the following, at page 540:

"It is the contention of the village solicitor that it was appellant's duty to have claimed and proved that his occupancy was within the protection of the preordinance status. With this latter claim we cannot agree.

"Notwithstanding what has been said above in respect of the contents or form of the affidavit, the burden of proving appellant's violation of the ordinance rested upon the village and it was the duty of the prosecution to show that the building was erected after the enactment of the ordinance. * * *"

The *McPhee case, supra,* is cited with approval in the case of *State* v. *Pierce* (1956), 164 Ohio St., 482, where in course of the opinion by Hart, J., there appears the following at page 487:

"* * * In a prosecution for the violation of any zoning ordinance, the burden is on the zoning authority to show that the defendant does not come within any exception in the ordinance. *Village of Strongsville* v. *McPhee*, 142 Ohio St., 534, 53 N. E. (2d) 522."

It was contended by the prosecution that the burden of proof was not on the state of Ohio, but was on the defendant with reference to proving that the defendant did not come within any exception in the ordinance. The Supreme Court of Ohio

has held otherwise, which makes it the duty of this court to uphold the second assignment of error.

As to the constitutional question sought to be raised in the third assignment of error, we express no opinion. See the *McPhee case, supra,* at page 540.

In our opinion, for the reasons set forth above, the first and second assignments of error are well taken and must be sustained, the judgments of the court below in each of the two cases are reversed and set aside, and the causes remanded.

*Judgments reversed.*

BRYANT, P. J., DUFFEY and TROOP, JJ., concur.

DUFFEY, J., concurring. I concur in the finding that the affidavit is insufficient. Many municipal ordinances prohibit parking of commercial vehicles in residential areas except for the purpose of service to the premises. However, the county resolution here contains no such provision in Section III or elsewhere. Such parking might be evidence of an illegal use, *i. e.,* to prove a commercial enterprise. Parking itself, where of a certain nature or duration, might become an illegal use, *i. e.,* general storage of vehicles, a commercial parking operation, or parking in conjunction with some enterprise on the premises or elsewhere. The affidavit here contains no facts from which any such inference could be drawn.

The affidavit refers also to Section XXIX of the resolution. This section purports to make violations a misdemeanor, set penalties, etc. County commissioners have no authority to create a crime. In that respect, Section XXIX can be only declaratory of state statutes and of no legal significance in itself.